UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHEIKH DIAKHATE,

          Petitioner,                      **DECISION AND ORDER**

    v.                            6:23-CV-06736 EAW

BRIAN CASEY[1],

          Respondent.

_____

## INTRODUCTION

*Pro se* petitioner Cheikh Diakhate ("Petitioner"), a civil immigration detainee currently held at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Dkt. 1).[2] Petitioner previously sought an injunction barring his removal during the pendency of this action (Dkt. 8), which the Court denied (Dkt. 9).

---

[1]     Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Brian Casey has been substituted as Respondent in this action. The Clerk is directed to amend the case caption accordingly.

[2]     The petition also purports in the caption to be a "complaint for declaratory and injunctive relief." (Dkt. 1 at 1). However, the relief sought by Petitioner is specifically release from custody. (*See id.* at 45-46). Petitioner's attack on his detention falls "squarely within [the] traditional scope of habeas corpus," *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973), he indicated on his civil cover sheet that this was a habeas corpus petition (Dkt. 1-2), and he has paid the $5.00 filing fee for a habeas corpus petition and not the $350 filing fee for a general civil action. The Court accordingly treats the case as a petition for a writ of habeas corpus.

Petitioner has now filed nine motions: (1) a motion to file an amended petition (Dkt. 12); (2) a motion seeking an investigation into alleged misconduct by immigration judge ("IJ") Robert P. Driscoll (Dkt. 13); (3) a motion for a stay of removal while this action is pending (Dkt. 14); (4) a motion for sanctions (Dkt. 15); (5) a motion seeking relief from certain conditions of confinement at the BFDF (Dkt. 16); (6) a motion to file an amended petition and for class certification (Dkt. 17); (7) a motion for reconsideration of the Court's denial of his request for injunctive relief (Dkt. 18); (8) another motion for a stay of removal while this action is pending (Dkt. 19); and (9) a third motion for a stay of removal while this action is pending (Dkt. 20). Respondent has moved to dismiss the petition. (Dkt. 21).

For the reasons that follow, Petitioner's pending motions are denied, Respondent's motion is granted in part and denied in part, and the parties are directed to make supplemental filings as described further below.

## BACKGROUND

Petitioner is a citizen and national of Senegal. (Dkt. 21-2 at ¶ 5). Petitioner was ordered removed to Senegal on July 17, 2023. (*Id*. at ¶ 39). He appealed that decision to the Board of Immigration Appeals ("BIA"). (*Id*. at ¶ 40). On December 12, 2023, the BIA dismissed Petitioner's appeal. (*Id*. at ¶ 41).

Petitioner had filed a Petition for Review ("PFR") with the Second Circuit on December 19, 2022, while his removal proceedings were ongoing. (*Id*. at ¶ 30). His PFR was dismissed by order dated November 13, 2023, with the mandate issuing on January 19, 2024. (Dkt. 21-3 at 54). The record before the Court is devoid of any information suggesting that

Petitioner filed a second PFR after the BIA dismissed his appeal. (*See* Dkt. 20 at 9 (Petitioner indicating that he has no action pending in the Second Circuit)).

Petitioner commenced this action on December 27, 2023. (Dkt. 1). He filed his initial motion for an injunction barring his removal during the pendency of this action on March 28, 2024. (Dkt. 8). The Court denied that motion on April 3, 2024. (Dkt. 9).

Petitioner thereafter filed his nine pending motions and Respondent filed his motion to dismiss. (Dkt. 12; Dkt. 13; Dkt. 14; Dkt. 15; Dkt. 16; Dkt. 17; Dkt. 18; Dkt. 19; Dkt. 20; Dkt. 21). Neither party has filed response papers. However, after filing his pending motions, Petitioner filed a notice of interlocutory appeal as to the Court's denial of his original motion for an injunction barring his removal during the pendency of this action. (Dkt. 23).

## DISCUSSION

### I.    Petitioner's Motions

#### A.    Motions to Amend and for Class Certification

The Court begins its analysis by considering Petitioner's motions to amend and for class certification. (Dkt. 12; Dkt. 17). Petitioner seeks to file an amended petition that asserts various claims on behalf of a class of detainees at the BFDF. (*See, e.g.,* Dkt. 12 at 4-5). The members of the putative class are "typically citizens of" what Petitioner refers to as "AMMMLACCC countries"—"AMMMLACCC" standing for "Africa, Mexico, Majority Muslim, Latin America, the Caribbean and Communist Controlled." (*Id*. at 6-7). In sum and substance, Petitioner alleges that citizens of "AMMMLACCC" countries are ordered removed and held in immigration custody at rates disproportionate to citizens of

"WECANZS" ("Western Europe, Canada, Australia, New Zealand, and/or Scandinavia") countries, in violation of the equal protection clause. (*Id*. at 7-23).

Petitioner is proceeding *pro se* and is not an attorney. In his proposed amended complaint, he explicitly states that he is "a layman, untrained in the law[.]" (*Id*. at 6). "Because a nonlawyer cannot bring suit on behalf of others, a nonlawyer *pro se* plaintiff cannot act as a class representative and bring a class action." *Santos v. Quaker Oat Pesticide*, No. 1:24-CV-5396 (LTS), 2024 WL 4627460, at *2 (S.D.N.Y. Oct. 26, 2024); *see also Rodriguez v. Eastman Kodak Co*., 88 F. App'x 470, 471 (2d Cir. 2004) (affirming dismissal of *pro se* class action complaint and explaining that "[a]lthough plaintiffs have a right to proceed *pro se* in civil actions pursuant to 28 U.S.C. § 1654, a *pro se* plaintiff may not seek to represent the interests of third-parties"). The Court accordingly denies Petitioner's motions seeking to amend the petition to assert claims on behalf of a class and for class certification. (Dkt. 12; Dkt. 17).

## B.    Motion for an Investigation

The Court next considers Petitioner's motion for an investigation into alleged misconduct by IJ Driscoll and other IJs at the BFDF. (Dkt. 13). Petitioner contends that these IJs have engaged in misconduct designed to cover up discriminatory animus towards detainees from "AMMMLACCC" countries. (*See id*.).

To the extent Petitioner is asking the Court to conduct its own investigation, he has misunderstood the Court's role. The Court itself is not an investigatory agency and does not have general supervisory authority over the IJs at the BFDF, who are employees of the

executive branch.  There is no mechanism by which the Court could or should conduct a freestanding investigation into alleged misconduct at the BFDF.

To the extent Petitioner is seeking to conduct discovery into alleged misconduct by the IJs at the BFDF in connection with this proceeding, "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  "Courts have adopted the Rules Governing Section 2254 Cases, including its discovery Rule 6 . . . in habeas proceedings under § 2241." *Toolasprashad v. Tryon*, No. 12CV734, 2013 WL 1560176, at *2 (W.D.N.Y. Apr. 11, 2013); *see also* Rules Governing Section 2254 Cases in the United States District Courts, Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a).").  Under Rule 6, the party seeking discovery must demonstrate "good cause." Rules Governing Section 2254 Cases in the United States District Courts, Rule 6(a), (b).  "In the absence of such a showing, the Court may exercise its discretion to deny a discovery request in a habeas proceeding under Section 2241."  *Yosef v. Killian*, 646 F. Supp. 2d 499, 504 n.4 (S.D.N.Y. 2009).

Petitioner has not demonstrated good cause to permit discovery into alleged misconduct by the IJs at the BFDF.  His argument is centered around his disagreement with various actions taken by IJ Driscoll in other individuals' removal proceedings, but he has not identified any basis to conclude that the requested information would support his individual habeas claims.  At best, the information appears potentially related to the legitimacy of Petitioner's removal order.  But—as will be discussed further below—this Court has no jurisdiction over any claims attacking the legitimacy of Petitioner's removal order.  Under

these circumstances, the Court declines to order discovery. Accordingly, Petitioner's motion for an investigation (Dkt. 12) is denied.

> C.    <u>**Motions to Stay Removal and for Reconsideration**</u>

The Court next considers Petitioner's various motions to stay his removal during the pendency of this habeas proceeding, and for reconsideration of the Court's prior denial of an injunction granting such relief. (Dkt. 14; Dkt. 18; Dkt. 19; Dkt. 20).

As an initial matter, the Court considers the impact of Petitioner's pending notice of interlocutory appeal. "[A]n interlocutory appeal, unless frivolous, generally divests the district court of jurisdiction respecting the issues raised and decided in the order on appeal." *Ret. Bd. of Policemen's Annuity & Ben. Fund of City of Chicago v. Bank of New York Mellon*, 297 F.R.D. 218, 220 (S.D.N.Y. 2013). Here, Petitioner filed a notice of interlocutory appeal as to the denial of his request for an injunction barring his removal while this action is pending. (Dkt. 23). Because an order denying an injunction is immediately appealable, *see* 28 U.S.C. § 1292(a)(1), the Court is not prepared to conclude that Petitioner's notice of interlocutory appeal is frivolous.

However, "the filing of a notice of appeal does not divest the district court of jurisdiction to decide any of the postjudgment motions listed in Fed. R. App. P. 4(a)(4)(A), if timely filed. On the contrary, the notice of appeal must be held in abeyance by [the court of appeals] until all such motions are disposed of, at which point the notice of appeal becomes effective." *Hodge ex rel. Skiff v. Hodge*, 269 F.3d 155, 157 n.4 (2d Cir. 2001); *see also* Fed. R. App. P. 4(a)(4)(B)(i) ("If a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A)—the notice

becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered." (emphasis added)).  Here, the Second Circuit determined that Petitioner had filed "at least one motion cited in FRAP 4(a)(4)" and consequently stayed the appeal pending resolution thereof.  *See Diakhate v. Searls*, No. 24-1492, Dkt. 21 (2d Cir. Sept. 13, 2024).  As such, Petitioner's notice of interlocutory appeal has not yet become effective under Federal Rule of Appellate Procedure 4(a)(4)(B)(i).[3]

The Court has already explained to Petitioner that it lacks the authority to stay his removal from the United States.  (*See* Dkt. 9).  "The REAL ID Act of 2005 mandates that judicial review of all administratively final orders of removal take place exclusively in the courts of appeals[.]"  *Ahmed v. Barr*, No. 20-CV-395 (JLS), 2020 WL 2395694, at *2 (W.D.N.Y. May 12, 2020); *see* 8 U.S.C. § 1252(a)(5) ("Notwithstanding any other provision of the law (statutory or nonstatutory) . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter.").  The Second Circuit has held that this "jurisdictional bar applies equally to preclude . . . an indirect challenge" to a removal order.  *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011).  Additionally, § 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien."

---

[3]    Alternatively, the Court would have the authority to deny Petitioner's motions pursuant to Federal Rule of Civil Procedure 62.1.

"[N]umerous courts in this circuit and others" have concluded "that the plain meaning of Section 1252 deprives federal district courts of jurisdiction over requests to stay orders of removal." *Ahmed v. Barr*, No. 20-CV-395 (JLS), 2020 WL 2395694, at *2 (W.D.N.Y. May 12, 2020) (collecting cases); *see also Al-Garidi v. Holder*, No. 09-CV-6160L, 2009 1439216, at *1 (W.D.N.Y. May 15, 2009) ("This Court and other district courts throughout the country have routinely held that because district courts have no jurisdiction to review final orders of removal, they have no jurisdiction to review requests for stays of removal.") (collecting cases).

In this case, Petitioner asks the Court to stay his removal specifically to "prevent the DHS/ICE from potentially unlawfully removing" him. (Dkt. 14 at 14-15). He also explicitly argues that if he "is successfully ordered released on his habeas corpus petition, any removal order would be nullified[.]" (Dkt. 20 at 9). It is apparent that Petitioner's requests for a stay are based on attacks on his removal order. The Court thus lacks jurisdiction thereover.[4] Petitioner's motions seeking this relief—and seeking reconsideration of the Court's prior denial of this relief—are denied.

The Court notes that in his motion for reconsideration, Petitioner purports to seek "a declaration . . . ordering that Elizabeth A. Wolford should be removed form [sic] this case."

---

[4] Even if it had jurisdiction to do so, the Court would not enter an order staying Petitioner's removal pending resolution of this matter. As discussed in more detail below, the only claim that is properly before this Court is that Petitioner's detention pending removal has become unconstitutionally prolonged. "If Petitioner was removed from the United States, he would no longer be detained, and his habeas petition would be denied as moot." (Dkt. 9). In other words, the Court would not order Respondent not to remove Petitioner from the United States when doing so would grant him the relief he is seeking—release from immigration detention.

(Dkt. 18 at 27).  To the extent this is meant to be a request for recusal, it is denied.  The reason given by Petitioner for his request is that the undersigned has "tried to stifle a challenge to the constitutionality of the DEATH to Non-White Statutes[5] and to shield arbitrary and discriminatory enforcement of immigration laws from Article III Court review."  (*Id*.). Petitioner's disagreement with the Court's handling of this case is not a basis for recusal.  *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . .  Almost invariably, [judicial rulings] are proper grounds for appeal, not for recusal.").

###### D.   Motion for Sanctions

Petitioner's motion filed at Docket No. 15 seeks: (1) a declaration that the "DEATH to Non-White Statutes" are unconstitutional; (2) the A-files of all "AMMMLACCC" citizens in removal proceedings; and (3) sanctions to be used "towards setting up a fund to assist AMMMLACCC families adversely affected by unlawful deportations."  (Dkt. 15 at 1).

Petitioner has identified a number of provisions of Title 8 of the United States Code that he refers to collectively as "the DEATH to Non-White Statutes, where DEATH means 'disguised enforcement and adjudication of terroristic hatred.'"  (*Id*. at 2).  He asks the Court to declare that these statutes are unconstitutional "due to arbitrary and discriminatory enforcement against AMMMLACCC citizens."  (*Id*. at 28).  Petitioner has failed to demonstrate his entitlement to such relief.  Without getting into the many other procedural and substantive flaws in Petitioner's request, "habeas corpus is the only avenue available to

---

[5]   The Court explains what Petitioner means by this phrase later in this Decision and Order.

confined individuals who seek to invalidate the duration of their confinement—either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody," and "a declaratory judgment action may only lie where the plaintiff seeks monetary damages or other relief that would not directly impact his or her . . . duration of commitment." *Dyous v. Psychiatric Sec. Rev. Bd.*, 708 F. App'x 39, 40 (2d Cir. 2018). As the Court explained above, the relief sought in the petition is release from custody. (*See* Dkt. 1 at 45-46). Under these circumstances, issuance of a declaratory judgment would not be appropriate.

Petitioner's request for the A-files of other individuals fails for the same reasons as his request for discovery into alleged misconduct by the IJs at the BFDF. Petitioner has not shown good cause to think that these files would contain information related to the habeas claim that is properly before this Court—that is, the legality of Petitioner's detention pending removal.

Finally, Petitioner has failed to identify an appropriate legal basis for issuance of sanctions. Petitioner's arguments assume that he will prevail on the merits of his claims, but that has not been determined. Further, the proposed sanctions seek to remedy the class action claims that Petitioner has been denied leave to pursue. His request for sanctions is thus also denied.

### E.    Motion Regarding Conditions of Confinement

Petitioner's next motion attacks the conditions of confinement at the BFDF. (Dkt. 16). Petitioner asserts that another detainee at the BFDF, Darron Thomas, has "been hampered in

his preparation of several court documents" because of the conditions of confinement, including lack of access to flash drives and fax machines.  (*Id*. at 2-3).

Regardless of the validity of these claims as to Mr. Thomas, Petitioner has failed to establish that they have any relevancy to the claims presented in this action.  Petitioner has also not demonstrated that any alleged deficiencies at the BFDF have prevented him from presenting his claims in this action.  *See generally Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001) (explaining that "law libraries and legal assistance programs do not represent constitutional rights in and of themselves, but only the means to ensure a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts," and thus "in the absence of actual or imminent harm," the judiciary must "leave to the political branches the choice among alternative means to achieve meaningful access to the courts" (quotations and alterations omitted).  This motion is therefore denied.

For all these reasons, the Court denies each of Petitioner's pending motions.  (Dkt. 12; Dkt. 13; Dkt. 14; Dkt. 15; Dkt. 16; Dkt. 17; Dkt. 18; Dkt. 19; Dkt. 20).

## II.    <u>Respondent's Motion to Dismiss</u>

The Court turns now to Respondent's motion to dismiss the petition.  (Dkt. 21).  Respondent argues that: (1) the petition is premature to the extent it challenges Petitioner's ongoing detention pending removal; and (2) to the extent Petitioner seeks to bring other challenges, the Court either lacks jurisdiction to hear those claims or those claims are not cognizable.  (*See* Dkt. 21-1).  For the reasons that follow, the Court grants Respondent's motion with respect to all claims not related to the legality of Respondent's prolonged

detention pending removal, but denies it solely as to Petitioner's claim this detention has become unconstitutionally prolonged.

### A.    Indirect Challenges to Removal and Other Claims

The petition in this case is somewhat difficult to understand. As Respondent notes, Petitioner appears at one point to be attempting to assert that he is unlawfully detained in violation of the double jeopardy clause. (Dkt. 21-1 at 12; *see* Dkt. 1 at 39). But the double jeopardy clause "protects only against the imposition of multiple criminal punishments for the same offense." *Hudson v. United States*, 522 U.S. 93, 99 (1997). Immigration detention is not a criminal punishment, and the double jeopardy clause simply has no application here. Any claim based on the double jeopardy clause is dismissed.

The petition also makes numerous allegations about the treatment of individuals from "AMMMLACCC" countries during removal proceedings. To the extent these allegations are indirect attacks on the validity of Petitioner's removal order, this Court lacks jurisdiction to hear any such claim, and it is dismissed without prejudice. *See Delgado*, 643 F.3d at 55.

To the extent these allegations are meant to support a claim that Petitioner's current detention is the result of discriminatory animus in violation of the equal protection clause, he has failed to state a viable claim. Petitioner has not alleged any facts supporting the conclusion that he personally was detained based on his membership in a protected category. Instead, Petitioner has made broad allegations that individuals from "AMMMLACCC" countries are disproportionately detained. This category was seemingly invented by Petitioner and is, as Respondent notes, "a confusing mixture of people organized by political structure in one case (i.e., Communist Controlled), religion in another case (i.e., Majority

Muslim), or simply location in other cases (e.g., Mexico, or the Caribbean)." (Dkt. 21-1 at 13). Petitioner has not demonstrated that having heritage from an "AMMMLACCC" country is a cognizable protected category.

Nor has he alleged any facts supporting the conclusion that it was discriminatory animus and not his own individual circumstances that caused him to be detained pending removal. Petitioner was provided with specific reasons for his detention (*see, e.g.,* Dkt. 21-3 at 27), and he has not plausibly alleged that similarly situated individuals—including individuals with similar criminal histories—were not detained. *See Brown v. City of Oneonta, New York,* 221 F.3d 329, 337 (2d Cir. 2000) ("[I]f a plaintiff seeks to prove selective prosecution on the basis of his race, he must show that similarly situated individuals of a different race were not prosecuted." (quotation omitted)). Plaintiff's claim that his detention violates the equal protection clause is thus subject to dismissal. *See generally McFarland v. Scott*, 512 U.S. 849, 856 (1994) ("Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face[.]").

Finally, Petitioner has made a number of allegations regarding alleged misconduct by government lawyers and officials in other immigration proceedings before this Court. (*See* Dkt. 1 at 21-34). Petitioner has failed to tie these allegations to his own claims, nor do they support a cognizable claim that Petitioner could assert on his own behalf. To the extent Petitioner is trying to assert a claim based on these allegations, it is dismissed.

**B.**     **Prolonged Detention Claim**

The Court does have jurisdiction over Petitioner's challenge to his ongoing detention pending removal. Petitioner is detained pursuant to 8 U.S.C. § 1231, which governs detention

- 13 -

of individuals subject to a final order of removal.  *See Johnson v. Guzman Chavez*, 594 U.S. 523, 534 (2021).

When an immigration judge enters a final order of removal against an individual, "the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody."  *See Zadvydas v. Davis*, 533 U.S. 678, 682 (2001); *see also Wang v. Ashcroft*, 320 F.3d 130, 145 (2d Cir. 2003) ("[d]uring the [90-day] removal period" under § 1231, "the Attorney General shall detain the alien").  The removal period begins on the latest of: (1) the date the removal order becomes administratively final; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or (3) the date the alien is released from detention or confinement, unless such detention or confinement is the result of an immigration process.  8 U.S.C. § 1231(a)(1)(B).

After expiration of the 90-day removal period, 8 U.S.C. § 1231(a)(6) allows the government to continue to detain certain classes of aliens or to release them, subject to appropriate terms of supervision.  *Id*.  In *Zadvydas*, the Supreme Court read "an implicit limitation into" § 1231(a)(6), holding that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.  It does not permit indefinite detention."  533 U.S. at 689.  The *Zadvydas* Court further adopted a 6-month "presumptively reasonable period of detention," and instructed that "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut

that showing." *Id*. at 701; *see also Wang*, 320 F.3d at 146 ("The [*Zadvydas*] Court stated that detention is presumptively reasonable for six months following a final removal order, and that, after the first six months, detention violates § 241 if (1) an alien demonstrates that there is no significant likelihood of removal in the reasonably foreseeable future and (2) the government is unable to rebut this showing.").

Here, Petitioner's order of removal became administratively final on December 12, 2023, when his appeal was dismissed by the BIA.  *See* 8 C.F.R. § 1241.1(a).  The petition was thus filed within the presumptively reasonable period of detention identified by the *Zadvydas* court.  However, that presumptively reasonable period of detention may have now expired (although it also may not have, as discussed further below).  Thus, while Petitioner's prolonged detention claim was premature in April 2024 (when the motion to dismiss was filed), the Court cannot reach that conclusion now on the record before it.

The Court notes that there may well be legally justifiable reasons why Petitioner has not yet been removed to Senegal.  In particular, the record before the Court indicates that Petitioner "refused to comply with preparation of documentation, including refusing to have his photo taken and stating that he will not assist in helping to acquire travel documents." (Dkt. 21-2 at ¶ 45).  The removal period may be extended "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).  The information before the Court is insufficient to allow the Court to ascertain whether the removal period has been extended in this case.

Accordingly, the Court will afford Respondent an opportunity to file a supplemental brief, addressing specifically the following issues: (1) whether the removal period has been extended in this case due to Petitioner's failure to cooperate in obtaining travel documents; and (2) if the removal period has not been extended, whether there is a significant likelihood of removal in the reasonably foreseeable future.  Petitioner will be permitted to respond to this filing.  However, **Petitioner is cautioned that any future motions making arguments and/or seeking relief that the Court has already considered and denied will be summarily rejected**.

## CONCLUSION

For these reasons, the Court denies Petitioner's pending motions.  (Dkt. 12; Dkt. 13; Dkt. 14; Dkt. 15; Dkt. 16; Dkt. 17; Dkt. 18; Dkt. 19; Dkt. 20).  The Court denies Respondent's motion to dismiss (Dkt. 21) without prejudice as to Petitioner's prolonged detention claim but grants Respondent's motion in all other respects.  Respondent shall file a supplemental brief as described above within 45 days of entry of this Decision and Order.  Petitioner shall file any response within 20 days of receipt of the supplemental brief.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        November 25, 2024
              Rochester, New York